UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**ROBERT P. GOODRICH,** )
    **Plaintiff,** )
    )
    v. )   C.A. No. 03-12541-NG
    )
**TIMOTHY HALL,** )
    **Defendant.** )

GERTNER, D.J.:

**MEMORANDUM AND ORDER RE:**
**PETITION FOR HABEAS CORPUS**
March 11, 2005

**I.   INTRODUCTION**

Robert Goodrich petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 [docket entry # 7], alleging that false testimony before the state grand jury violated his due process rights under the Fourteenth Amendment.  For the reasons outlined below, I hereby **DENY** his petition.

**II.  BACKGROUND**

This case arises out of two indictments returned by a Middlesex County grand jury on January 6, 2000, charging Petitioner with armed robbery[1] and being a habitual criminal. The underlying case arose from an allegation that the defendant, armed with a gun, stole $200 from his employer Yajun Yang in Malden, Massachusetts, on August 25, 1999.

---

[1] Respondent's supplemental answer [docket entry # 34] states that the first indictment charged Petitioner with assault and battery by means of a dangerous weapon.  This is incorrect; the grand jury returned an indictment charging Petitioner with armed robbery.

The Commonwealth's sole witness before the grand jury was Detective John Rivers of the Malden Police Department. Detective Rivers testified by reading the police report of Officer John Byrne, the Malden Police Officer who arrived at the scene on August 25, 1999, at approximately 12:40 a.m. Rivers testified as follows:

> [T]he victim, Yajun Yang, stated that an ex-employee had entered the business with a black handgun, stuck it in his right side, and then this ex-employee then [sic] stole the victim's wallet with $200 in it and forced the victim into the trunk, locking it after he placed him inside the trunk. The victim states that he only knows the suspect as Bob, and that approximately two months ago the same employee stole $12,000 from him.

Shortly after the above testimony, the prosecutor asked if the grand jurors had any questions for Detective Rivers. One juror inquired, "You said something about there were two robberies; one for $200 and one for $12,000?" Detective Rivers responded:

> There was an earlier -- From what the victim was telling us, there was an earlier robbery. He had been robbed of $12,000. We learned later that this had apparently taken place in the -- in the City of Revere, which is in the County of Suffolk and not within the jurisdiction of the Malden Police Department.

At this point, the prosecutor offered the following:

> Let me just interject there and instruct you to disregard the information pertaining to that. That is to be stricken from your minds. The scope and focus of your

> proceeding here today is the matter that
> occurred on August 25 of 1999 at the City of
> Malden in the manner in which the detective
> has testified.  So, that is to be the focus
> of your deliberations.

The parties agree that Petitioner was never arrested or charged with the prior robbery.

On September 26, 2000, Petitioner moved in Middlesex Superior Court to dismiss the indictment, alleging that Detective Rivers' testimony was misleading and affected the grand jury's decision to indict, pursuant to Commonwealth v. O'Dell, 392 Mass. 445 (1984).  After a hearing, the Middlesex Superior Court denied the motion to dismiss without written opinion.

On January 25, 2001, Petitioner went to trial before a jury on the armed robbery charge.  The parties agree that no mention of the prior robbery was made.  On January 26, 2002, the jury found Petitioner guilty.  On January 29, 2002, the Commonwealth entered a *nolle prosequi* on the indictment charging Petitioner as a habitual criminal.  Petitioner was sentenced to ten to fifteen years in the Massachusetts Correctional Institute at Cedar Junction.

Petitioner raised the same O'Dell argument, as well as a claim that his federal due process rights had been violated, in his appellate brief before the Massachusetts Appeals Court, which he filed in March 2002.  On December 5, 2002, that court affirmed his conviction in a one paragraph opinion "substantially for the

reasons set forth in the Commonwealth's brief." Commonwealth v. Goodrich, 56 Mass. App. Ct. 1113 (2002). Petitioner repeated these arguments in his Application for Further Appellate Review before the Supreme Judicial Court. The Supreme Judicial Court denied Petitioner's application without written opinion on January 22, 2003. See Commonwealth v. Goodrich, 438 Mass. 1107 (2003).

Petitioner filed his petition for a writ of habeas corpus on December 17, 2003 [docket entry # 7]. Respondent moved to dismiss the petition on the ground that Petitioner's claims were not exhausted [docket entry # 17]. After the parties stipulated to dismissal of Petitioner's unexhausted claim [docket entry # 21], this Court denied Respondent's motion to dismiss on June 7, 2004, finding that the state courts were fairly alerted to the federal character of Petitioner's due process claim.

### III. ANALYSIS

#### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

> prohibits a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Williams v. Taylor, 529 U.S. 362, 399 (2000) (internal quotations omitted).  However, this "strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings."  Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (citing 28 U.S.C. § 2254(d)).  "After all, AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address."  Id.  Where such deference is not required, the appropriate standard of review is *de novo*.  Id.

In this case, it is clear that the state courts did not adjudicate Petitioner's due process claim.  The Supreme Judicial Court denied his appeal summarily, without a written opinion.  Commonwealth v. Goodrich, 438 Mass. 1107 (2003).  The Massachusetts Appeals Court was similarly reticent in denying Petitioner's appeal, writing only:

> The defendant's sole claim on appeal is that the indictment against him should have been dismissed because the Commonwealth presented improper testimony before the grand jury.  Substantially for the reasons set forth in the Commonwealth's brief, we find no merit in this contention.  Accordingly, the judgment of conviction is affirmed.

Commonwealth v. Goodrich, 56 Mass. App. Ct. 1113 (2002).  And the Commonwealth's brief relied exclusively on state law.[2]  Because this petition raises a situation similar to the one in Fortini --

---

[2] An exception to the Fortini rule applies where the state cases upon which the state court relied "adhere to a standard that is more favorable to the defendants than the federal standard."  Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (internal quotation omitted).  Because it is impossible to deduce which cases the Appeals Court relied upon in this case, however, Norton is not implicated.

where the Court "can hardly defer to the state court on an issue the state court did not address" -- *de novo* review applies.

  **B.** **Due Process Claim**

  Despite Respondent's argument to the contrary, there can be no doubt that the Fourteenth Amendment is applicable to the errors Petitioner alleges.  Though the Fifth Amendment's right to indictment by grand jury does not apply to the states, the Commonwealth may not simply choose any grand jury procedure it wants.  Rather, having created a state right to indictment by grand jury, see Commonwealth v. Holley, 69 Mass. 458, 459 (1855), due process dictates that the process may not be conducted arbitrarily or unfairly: "The fact that there is no constitutional requirement that States institute prosecutions by means of an indictment returned by a grand jury . . . does not relieve those States that do employ grand juries from complying with the commands of the Fourteenth Amendment in the operation of those juries."  Rose v. Mitchell, 443 U.S. 545, 557 n.7 (1979) (citation omitted) (addressing racial discrimination in grand jury selection).

  Nevertheless, Petitioner faces a significant challenge in demonstrating that relief is warranted here, for "[a]ll but the most serious errors before the grand jury are rendered harmless by a conviction at trial."  United States v. Reyes-Echevarria, 345 F.3d 1, 4 (1st Cir. 2003) (quoting United States v. Mechanik, 475 U.S. 66, 73 (1986)).  "Usually, the trial jury's verdict provides an adequate safeguard against the failings of the grand

jury process. Thus, dismissal after conviction is appropriate only in cases of serious and blatant prosecutorial misconduct -- misconduct so grave that it calls into doubt the fundamental fairness of the judicial process." United States v. Ortiz de Jesus, 230 F.3d 1, 4 (1st Cir. 2000).

Petitioner argues that he is entitled to relief because "the indictments were produced by the Commonwealth through knowingly false and inflammatory evidence." Pet.'s Mem. at 12. Further, he contends that "the resulting prejudice. . . as a result of the prosecutor's misconduct was irreparable, because the false testimony resulted in the grand jury returning an indictment." Id. See, e.g., United States v. Basurto, 497 F.2d 781, 785 (9th Cir. 1974) (due process "is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached"); but see United States v. Maceo, 873 F.2d 1, 3 (1st Cir. 1989) (stating that the First Circuit has not adopted Basurto's strict approach and noting that other circuits have specifically rejected it). Respondent contends that the prosecutor did not present improper evidence to the grand jury and, further, that the prosecutor took steps to cure any possibly prejudicial testimony. First, Respondent notes that Detective Rivers testified not that the police had knowledge of another robbery, but that the victim

-7-

stated that he had been robbed previously.[3]  Second, Respondent argues that there is no evidence that the prosecutor intentionally elicited testimony about the previous robbery. Third, Respondent characterizes the curative instruction issued by the prosecutor as clear and forceful.  Fourth, Respondent asserts that -- regardless of what occurred before the grand jury -- there is no dispute that Petitioner received a fair trial in which there was no mention of the earlier robbery.

It is exceedingly rare to grant relief for misconduct before a grand jury despite conviction by a jury.  See, e.g., Champagne v. Marshal, 2004 WL 437346, at *3 (1st Cir. 2004) (declining to grant relief where officer's testimony amounted to misstatements, rather than perjury; there was sufficient evidence to support the indictment; and officer's statement that petitioner had been "suspected of this type of thing before" was not sufficiently prejudicial); United States v. Maceo, 83 F.2d 1, 4 (1st Cir. 1989) (denying relief where misstatements did not amount to perjury; there was no allegation that prosecutor knew misstatements were untrue; and "no actual prejudice" was shown); United States v. DeRobertis, 728 F.2d 874, 875 (7th Cir. 1984) (acknowledging that "[t]here may be situations in which constitutional violations in the state grand jury system are serious enough to warrant federal habeas corpus relief regardless

---

[3] Respondent also makes much of the fact that, in response to the grand juror's question about the prior robbery, Detective Rivers began, "There was an earlier--" then rephrased his answer, "From what the victim was telling us . . . ."

of the effect of the violations on a subsequent trial" but denying relief where prosecutor's reference to victim's death as a "murder" "does not raise claims which strike at the fundamental values of our judicial system").

In contrast, the Second Circuit granted relief in <u>United States v. Hogan</u>, 712 F.2d 757 (2d Cir. 1983). In that case, the prosecutor "characterized [petitioner] as a real hoodlum, who should be indicted as 'a matter of equity'"; presented multiple instances of false testimony concerning previous uncharged crimes; "ma[de] himself an unsworn witness" and "suggested that [petitioner] was guilty of misconduct while he was a police officer"; and "apparently [took the] view that it would be helpful to show [petitioner's] predisposition to possess heroin." <u>Id.</u> at 760-61. Conceding that "a court's power to dismiss an indictment following a conviction at trial rarely is exercised," the court concluded that -- "based on the particular facts of this case" -- relief was warranted. <u>Id.</u> at 758, 762.

This is not such a case. Detective Rivers' references to the prior robbery were relatively brief and were made, as Respondent notes, in recounting the victim's description of his assailant. Furthermore, the prosecutor instructed the grand jurors that they were not to consider the incident in their deliberations. In an ideal world, of course, Detective Rivers would have eschewed mentioning the incident altogether, and the prosecutor would have issued the curative instruction immediately, instead of waiting until one of the grand jurors

questioned Detective Rivers about the prior robbery. But these shortcomings do not amount to "misconduct so grave that it calls into doubt the fundamental fairness of the judicial process." United States v. Ortiz de Jesus, 230 F.3d 1, 4 (1st Cir. 2000). Rather, this is one of the "usual[ ]" cases where "the trial jury's verdict provides an adequate safeguard against the failings of the grand jury process." Id. Accordingly, I hereby **DENY** the petition for a writ of habeas corpus.[4]

## IV. CONCLUSION

For the foregoing reasons, I hereby **DENY** the petition for a writ of habeas corpus.

**SO ORDERED.**

**Date:     March 11, 2005          s/ NANCY GERTNER, U.S.D.J.**

---

[4] Accordingly, there is no need to address Respondent's contentions that granting relief would amount to a new rule of constitutional law that cannot be applied retroactively on collateral review, see Teague v. Lane, 489 U.S. 288 (1989), and that any error was harmless, see Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).